Filed 9/19/23  Arendt v. Williams CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JANET ARENDT, | C095646 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2021-00303434-CU-PO-GDS) |
| v. | |
| KIRSTEN WILLIAMS, | |
| Defendant and Appellant. | |

To plead a cause of action for malicious prosecution of a criminal matter by a private individual, the complaint must allege the defendant initiated or procured the plaintiff's arrest and prosecution with malice and without probable cause.  (*Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710, 720 (*Sullivan*).)  " 'The test is whether the defendant was actively instrumental in causing the prosecution.' "  (*Ibid*.)

To be actively instrumental in causing the prosecution, the defendant must have at least sought out the police or prosecutorial authorities and falsely reported facts to them

1

indicating the plaintiff committed a crime. (*Sullivan, supra*, 12 Cal.3d at p. 720; *Hardy v. Vial* (1957) 48 Cal.2d 577, 581 [tort lies for malicious institution of quasi-judicial or administrative proceedings].)

A defendant may also be liable for malicious prosecution based on how she participated in the criminal proceeding. Merely giving testimony and responding to law enforcement inquiries in an active criminal proceeding does not constitute malicious prosecution. (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1482 (*Zucchet*).) But if the defendant took " 'an active part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another,' " such as " 'by insisting upon or urging further prosecution,' " and did so after learning there was no probable cause to believe the accused was guilty, the defendant is liable for malicious prosecution. (*Id*. at p. 1483, quoting Rest. 2d Torts, § 655 and com. c, pp. 413, 414.)

In this matter, the trial court denied defendant Kirsten Williams's anti-SLAPP motion against plaintiff Janet Arendt's complaint for malicious prosecution. Williams contends on appeal the trial court erred because Arendt's complaint did not as a matter of law adequately plead malicious prosecution. She argues that *Zucchet* further defined and expanded the elements of the tort by requiring a plaintiff in all malicious prosecution actions following a criminal trial to plead that the defendant "actively urged, insisted, or pressured" the prosecution of the accused. Williams asserts Arendt's complaint contains no such allegations, and the trial court erred by determining *Zucchet* did not apply in this instance.

Like the trial court, we conclude *Zucchet* does not apply. *Zucchet* provides an alternate path of establishing malicious prosecution based on the defendant's actions in continuing the prosecution, especially when the defendant did not initiate or procure the prosecution. Arendt alleged Williams initiated a criminal prosecution and an administrative accusation against her by making reports to authorities. Under that circumstance, Arendt was not required to also plead that Williams took an active part in

2

continuing or procuring the continuation of the criminal and administrative matters against her. We thus affirm the trial court's denial of Williams's anti-SLAPP motion.

## FACTS AND HISTORY OF THE PROCEEDINGS

Williams attacks only the complaint's allegations. She did not designate any evidence submitted by Arendt in opposition to the anti-SLAPP motion to be included in the appellate record, nor did she include a reporter's transcript. As a result, this is a judgment roll appeal. We presume sufficient evidence supports the trial court's factual findings and limit our review solely to the legal issue Williams raises. (See *Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574-575.)

We note that prior to submitting her opening brief, Williams sought leave to augment the record with the evidence Arendt had submitted in opposition to the anti-SLAPP motion. We denied the motion without prejudice to Williams refiling the motion and showing the evidence submitted with her motion had actually been filed or lodged with the trial court. Williams did not file a new motion and instead filed her opening brief. In an abundance of caution, Arendt sought and obtained leave to augment the record to include the evidence, and she addressed the sufficiency of the evidence in her respondent's brief. Nonetheless, Williams in her reply brief insists the dispute on appeal "is one purely of law" limited to whether a malicious prosecution plaintiff must plead and prove the defendant was "actively instrumental" in the prosecution in the manner described in *Zucchet*. We will limit our review to that question.

The verified complaint alleges that Arendt was employed in 2017 at a child day care center. At that time, the center provided day care services to Williams's daughter, A.

On June 22, 2017, Williams picked her daughter up at the center and complained about Arendt's language and behavior. Two days later, while on a family camping trip, Williams detected bruising on A.'s abdomen for the first time. She falsely accused

3

Arendt of physically abusing A. Within the following two weeks, she reported her false allegations to police and to the state Department of Social Services (Department).

Police subsequently arrested Arendt. She was charged with two felonies and a misdemeanor based in whole or in part on Williams's false allegations of child abuse. Arendt posted a $50,000 bond to be freed from jail.

Near the same time, the Department issued an order prohibiting Arendt from being at the care center based on the false statements Williams made as part of the Department's investigation. The Department subsequently filed an accusation against Arendt based on Williams's statements to prohibit Arendt from ever being employed by any facility the Department licensed.

In 2020, a jury acquitted Arendt of all criminal charges against her.

Also in 2020, the Department held a hearing on its accusation against Arendt. Following the hearing, the Department dismissed the accusation for lack of evidence.

Arendt brought this action against Williams for malicious prosecution. She alleged that:

Williams knew the statements she made against Arendt were false. Williams had no probable cause to make the statements to doctors, police, and the Department. She knew or should have known her claims were unfounded, but she continued to make false statements to prosecute Arendt under the complaint and the accusation.

Williams made the statements with the intent to injure Arendt, and she did so with willful and conscious disregard of Arendt's rights. Williams knew "there was no probable cause to prosecute those matters initially, and then to support the false testimony to the matter to trial and [the Department] but she did so."

Williams's conduct caused Arendt to incur damages. Arendt also seeks punitive damages.

Williams filed an anti-SLAPP motion (a motion against a strategic lawsuit against public participation) to strike the complaint pursuant to Code of Civil Procedure section

4

425.16. She raised her pleading argument under *Zucchet* for the first time in her reply brief on the motion. She argued the complaint was insufficient because it did not allege or imply that Williams "was instrumental, insisted, urged, or persuaded the prosecution of [Arendt] to continue" as required under *Zucchet*.

The trial court denied the anti-SLAPP motion. Applying the anti-SLAPP law's two-step inquiry, the court first determined that Williams's alleged statements to police and the Department were protected communications under the anti-SLAPP law.

On the second step, the court ruled that Arendt's complaint adequately pleaded a malicious prosecution claim and that Arendt introduced sufficient admissible evidence to establish a prima facie case for each of the tort's elements. Of relevance here, the complaint was legally sufficient because it pleaded that Williams was actively instrumental in Arendt's arrest and prosecution due to her false reports of abuse and that she acted with malice and without probable cause.

The trial court reviewed *Zucchet* and rejected its application. The court stated the opinion was factually distinguishable and not dispositive of the issues raised in Williams's motion in light of the holding in *Greene v. Bank of America* (2013) 216 Cal.App.4th 454 (*Greene*). Under *Greene* and *Sullivan, supra*, 12 Cal.3d at page 720, a malicious prosecution plaintiff had to show that the defendant was actively instrumental in causing the prosecution of the plaintiff, and a plaintiff could make that showing by pleading and proving the defendant had sought out the police and falsely reported facts to them indicating the plaintiff had committed a crime. (*Greene,* at pp. 463-464.) The trial court concluded that Arendt's allegations satisfied the pleading requirements set forth in *Greene*.

## DISCUSSION

An anti-SLAPP motion is a statutory procedure provided to weed out, at an early stage, meritless claims arising from constitutionally protected activity. (*Baral v. Schnitt*

5

(2016) 1 Cal.5th 376, 384.) Resolving an anti-SLAPP motion involves two steps. First, the moving defendant must show that the plaintiff's claim arises from the defendant's exercise of her constitutional rights of speech and petition. (*Ibid.*; Code Civ. Proc., § 425.16, subds. (a), (e).) The parties agree that Arendt's action arises from Williams's protected activity.

Second, the plaintiff opposing the anti-SLAPP motion must establish the probability of succeeding on her claim. (*Baral v. Schnitt, supra*, 1 Cal.5th at p. 384.) The California Supreme Court has described this step as a " 'summary-judgment-like procedure.' " (*Ibid.*) The trial court determines "whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." (*Id.* at pp. 384-385.) The court accepts the plaintiff's evidence as true, and it evaluates the defendant's showing "only to determine if it defeats the plaintiff's claim as a matter of law." (*Id.* at p. 385.) We review a trial court's ruling on an anti-SLAPP motion de novo. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

Williams contends Arendt's complaint does not state a legally sufficient claim for malicious prosecution. She argues *Zucchet* further defined the tort of malicious prosecution and expanded and amplified the pleading requirements stated in *Greene* and other authorities by setting forth what actions a private citizen must take to be found to have "prosecuted" a criminal action. Under Williams's reading, *Zucchet* requires all malicious prosecution plaintiffs to allege the defendant took actions to affirmatively prosecute the underlying criminal action "by way of urging, pressuring or encouraging" the plaintiff's prosecution. Williams asserts that as a result, *Zucchet* applies to any civil claim for malicious prosecution following a criminal trial. She argues the trial court erred by not applying *Zucchet* and not finding under *Zucchet* that Arendt's complaint was legally insufficient.

We disagree with Williams's argument. Arendt's complaint sufficiently pleaded malicious prosecution arising from Williams's initiation of the criminal prosecution and administrative accusation against Arendt.

The tort of malicious prosecution is generally defined as " 'improperly instituting or maintaining' a legal action." (*Leon v. County of Riverside* (2023) 14 Cal.5th 910, 921 (*Leon*), quoting *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169.) To recover for malicious prosecution, the plaintiff must plead the underlying action was "(i) initiated or maintained by, or at the direction of, the defendant, and pursued to a legal termination in favor of the malicious prosecution plaintiff; (ii) initiated or maintained without probable cause; and (iii) initiated or maintained with malice." (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775.)

The claim must be based on "the defendant's role in bringing the proceedings about." (*Leon, supra*, 14 Cal.5th at p. 921.) A private person may be civilly liable for malicious prosecution of a criminal action without personally signing the complaint that initiated the action. (*Zucchet, supra*, 229 Cal.App.4th at p. 1481.) The test is whether the defendant was " 'actively instrumental in causing the prosecution.' " (*Sullivan, supra*, 12 Cal.3d at p. 720.)

A malicious prosecution defendant may be liable in two different ways. The defendant may be liable for initiating, instigating, procuring, or being actively instrumental in putting in motion the criminal action. (*Leon, supra*, 14 Cal.5th at p. 921; *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1131, fn. 11.) At a minimum, the defendant must have sought out the police or prosecutorial authorities and falsely reported facts to them indicating the plaintiff committed a crime. (*Sullivan, supra*, 12 Cal.3d at p. 720.)

Thus, a person who gives information to prosecuting authorities such that she was "the inducing cause of the arrest and prosecution" may be liable for malicious prosecution. (*Sandoval v. Southern Cal. Enterprises* (1950) 98 Cal.App.2d 240, 248.)

7

The defendant need not have personally made the affidavit required for the complaint's issuance to be liable.  (*Ibid*.)

A person who did not procure the initiation of a criminal action may also be liable for malicious prosecution.  A defendant may be liable due to the manner in which she maintained, participated in, or continued the criminal action without probable cause after its institution.  (*Leon, supra*, 14 Cal.5th at p. 921; *Pacific Gas & Electric Co. v. Bear Stearns & Co., supra*, 50 Cal.3d at p. 1131, fn. 11; *Nunez v. Pennisi* (2015) 241 Cal.App.4th 861, 873.)  This is because continuing a malicious prosecution action without probable cause may inflict additional damage on the plaintiff.  (*Lujan v. Gordan* (1977) 70 Cal.App.3d 260, 263.)

*Zucchet* established parameters for determining liability in the second type of malicious prosecution, when the malicious prosecution defendant maintained or continued the criminal action against the plaintiff.  In the case before us, however, Arendt did not plead Williams was liable for continuing the criminal action against her; she pleaded Williams was liable for initiating the action against her.  Thus, contrary to Williams's argument, *Zucchet* does not apply here.

A description of *Zucchet* will make the point.  In that case, a federal grand jury indicted some members of a city council, including Zucchet, and a private business owner for multiple counts of fraud arising from a scheme between the defendants to repeal a city ordinance that adversely affected the business owner's business.  (*Zucchet, supra*, 229 Cal.App.4th at pp. 1472-1473.)  About two years after the indictments were issued, the owner informed the government he made a $10,000 bribe to the city council members.  (*Id*. at p. 1473.)  At trial, the owner testified as part of a plea bargain that he made payments of $6,000 and $10,000 to divide among the council members involved in the scheme.  (*Ibid.*)

The jury acquitted Zucchet of 28 of the 37 counts against him.  The district court granted judgment of acquittal on seven additional counts, and the federal government

8

voluntarily dismissed the remaining two counts. (*Zucchet, supra*, 229 Cal.App.4th at pp. 1473-1474.)

Zucchet then filed a malicious prosecution action against the business owner. (*Zucchet, supra*, 229 Cal.App.4th at p. 1475.) He alleged the owner falsely told the U.S. Attorney's office that he had bribed council members with $10,000 in cash, and that the owner falsely testified to that bribery at trial as part of his plea bargain. (*Ibid.*) The business owner filed an anti-SLAPP motion. The trial court denied the motion, but the court of appeal reversed. (*Id.* at pp. 1471, 1475.)

The court of appeal stated the issue was whether the business owner was in the position of someone who was actively instrumental in causing Zucchet's prosecution by informing prosecutors of the $10,000 bribe after the criminal proceedings had begun and testifying about that payment after entering into a plea agreement. (*Zucchet, supra*, 229 Cal.App.4th at p. 1482.) The court determined the owner was not actively instrumental in causing the prosecution. His role was always limited to being a trial witness and providing information to authorities in an ongoing investigation, and those actions were not sufficient to establish liability. (*Id.* at p. 1485.) "Merely giving testimony and responding to law enforcement inquiries in an active criminal proceeding" was not the equivalent of instigating or being actively instrumental in causing the prosecution and thus did not constitute malicious prosecution. (*Id*. at p. 1482; see *Cedars–Sinai Medical Center v. Superior Court* (1988) 206 Cal.App.3d 414.)

The court of appeal then relied on the Restatement Second of Torts (Restatement) to help it define what type of conduct would qualify as malicious prosecution after the criminal prosecution had begun. (*Zucchet, supra*, 229 Cal.App.4th at p. 1483.) The court stated, "According to section 655 of the Restatement, '[a] private person who takes an active part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings.' (Restatement, § 655.) More specifically, the

9

Restatement comments that, 'In order that there may be liability under the rule stated in this Section, the defendant must take an active part in their prosecution after learning that there is no probable cause for believing the accused guilty. It is not enough that he appears as a witness against the accused either under subpoena or voluntarily, and thereby aids in the prosecution of the charges which he knows to be groundless. *His share in continuing the prosecution* must be active, as by insisting upon or urging further prosecution.' (Restatement, § 655, com. c, p. 414.)" (*Zucchet*, at p. 1483, italics added.) Other treatises were in agreement. (*Ibid.*)

From this, the court of appeal determined the business owner was not liable for actively continuing the prosecution. Although the Restatement acknowledged that someone could be liable for maliciously continuing a prosecution rather than maliciously initiating a prosecution, there was "no evidence or allegation that [the owner] insisted upon or urged further prosecution of the case against Zucchet, or that he gave advice to the prosecutors or placed pressure on the government to continue the case against Zucchet." (*Zucchet, supra*, 229 Cal.App.4th at pp. 1484, 1485.) Although the owner's testimony had been valuable, the significance of his testimony did not transform him "into an active participant who urged that the government continue to prosecute Zucchet." (*Ibid.*)

This explanation of *Zucchet* exposes Williams's mistaken reliance on the case. No where did the *Zucchet* court hold that a plaintiff in all malicious prosecution actions had to allege the defendant took actions to affirmatively prosecute the underlying criminal action by way of urging, pressuring, or encouraging the plaintiff's prosecution. The court distinguished between liability for maliciously initiating a prosecution and maliciously continuing a prosecution, and it was only in the latter case when the complaint had to allege that the defendant's share in *continuing the prosecution* was " 'active, as by insisting upon or urging further prosecution.' (Restatement, § 655, com. c, p. 414.)" (*Zucchet, supra*, 229 Cal.App.4th at p. 1483.)

10

*Zucchet* agreed with *Greene* and *Sullivan* that if the malicious prosecution plaintiff claimed the defendant was liable for maliciously initiating the criminal action, the plaintiff had to allege the defendant at a minimum " ' "sought out the police or prosecutorial authorities and falsely reported facts to them indicating that plaintiff has committed a crime." ' " (*Zucchet, supra*, 229 Cal.App.4th at p. 1482, quoting *Sullivan, supra*, 12 Cal.3d at p 720, and *Greene, supra*, 216 Cal.App.4th at pp. 463-464.) But such a plaintiff need not also plead that the defendant urged, pressured, or encouraged further prosecution of the criminal matter.

Although not a model of clarity, Arendt's complaint sufficiently pleaded that Williams was liable for malicious prosecution by initiating the criminal and administrative proceedings against Arendt. The complaint alleged that Williams reported false allegations of child abuse against Arendt to police and the Department. As a result, those agencies prosecuted Arendt, and both actions concluded in Arendt's favor. The complaint also alleged Williams made her reports with malice and without probable cause. The complaint thus adequately pleaded a cause of action for malicious prosecution, and the trial court correctly denied Williams's anti-SLAPP motion.

Williams contends this holding raises significant public policy concerns. She asserts that affirming the trial court's order will chill citizens' willingness to report child abuse and assist with the investigation and prosecution of the crime. Unlike persons mandated by statute to report suspected child abuse who are given absolute immunity for reporting, ordinary citizens have no similar absolute immunity. (Pen. Code, § 11172, subd. (a).) Williams asserts that without providing them that protection under the law, the state's public policy to protect children will not be served.

Courts have traditionally regarded the tort of malicious prosecution as a disfavored cause of action. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872.) It may potentially chill an ordinary citizen's willingness to report criminal conduct or bring a civil action. (*Ibid*.) However, this legitimate concern does not defeat a legitimate cause

11

of action for malicious prosecution.  (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 740.)

Maliciously commencing a criminal or civil action " 'is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. . . .  [¶]  The judicial process is adversely affected . . . not only by the clogging of already crowded dockets, but by the unscrupulous use of the courts by individuals ". . . as instruments with which to maliciously injure their fellow men." [Citation.]'  (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50-51 [], fn. omitted.)  '[W]hen *the litigation is groundless and motivated by malice* the balance tips in favor of the policy of redressing the individual harm inflicted by that litigation.' (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 695 [].)"  (*Siebel*, at pp. 740-741.)

The interests are no different when a person falsely accuses another of child abuse. Indeed, in that circumstance, the Legislature has sought "to balance, on the one hand, the public interest in ferreting out cases of child abuse so that the child victims can be protected from harm and, on the other hand, the policy of protecting the reputations of those who might be falsely accused.  [Citation.]  The Legislature has struck that balance by withholding immunity from those who knowingly make false reports of child abuse." (*Begier v. Strom* (1996) 46 Cal.App.4th 877, 885, fn. omitted.)  As a result, and as a matter of statute, any person who is not a mandated reporter who knowingly or with reckless disregard makes a false report of child abuse is liable for any damages caused. (Pen. Code, § 11172, subd. (a).)  Thus, Williams's policy arguments about the risks raised by malicious prosecution actions in child abuse cases and the need to protect all non-mandated reporters from liability are best addressed to the Legislature, not us.

DISPOSITION

The trial court's order denying the anti-SLAPP motion is affirmed.  Costs on appeal are awarded to Arendt.  (Cal. Rules of Court, rule 8.278(a).)


                      _____

                      HULL, J.


We concur:


_____

EARL, P. J.


_____

RENNER, J.

13