Filed 9/30/21  Cox v. Harris CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JERRY COX, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> ASHLEY HARRIS, <br><br> Defendant and Respondent. | F079240 <br><br> (Super. Ct. No. 11149) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Mariposa County.  Michael A. Fagalde, Judge.

Jerry D. Cox, in pro. per.; Law Offices of Marc E. Angelucci and Marc E. Angelucci for Plaintiff and Appellant.

Jones Day, Erica L. Reilley, Erna Mamikonyan and Melissa Adams; Family Violence Appellate Project, Shuray Ghorishi, Arati Vasan, Jennafer Dorfman Wagner and Erin C. Smith for Defendant and Respondent.

-ooOoo-

Defendant Ashley Harris made a report to the police[1] that plaintiff Jerry Cox had assaulted and raped her at Cox's ranch property. After a two-year investigation by the police, the district attorney elected to dismiss the criminal charges against Cox pursuant to section 1385 of the Penal Code. Cox then filed a civil complaint against Harris for defamation, abuse of process and malicious prosecution, premised on his claim that Harris's report to the police was false. After retaining an attorney, Cox voluntarily dismissed all but the malicious prosecution cause of action. In response to the lawsuit brought against her, Harris filed a special motion to strike the complaint under Code of Civil Procedure[2] section 425.16, commonly known as the anti-SLAPP statute. The anti-SLAPP statute provides a mechanism for the early dismissal of certain meritless lawsuits arising from protected activity, generally referred to as SLAPP suits,[3] if the requirements for relief are met. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 [the statute "provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity"].) In this case, the special motion to strike was granted by the trial court, and Cox now appeals from that order. Based upon our de novo review, we conclude (i) the underlying complaint arose out of activity protected by the anti-SLAPP statute, and (ii) Cox failed to substantiate his claim of malicious prosecution. Because both prongs for granting relief under section 425.16 were met in this case, the motion was properly granted. Accordingly, the trial court's order granting the motion is affirmed. Additionally, the subsequent order by the trial

---

[1] We use the term "police" in the general sense of law enforcement officers. In this case, the law enforcement officers were with the Mariposa County Sheriff's Office. For purposes of this opinion, police and sheriff are used interchangeably.

[2] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

[3] A "SLAPP" suit is an acronym for a strategic lawsuit against public participation. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 & fn. 1.)

court granting Harris's request for attorney fees under the anti-SLAPP statute is likewise affirmed.**4**

## BACKGROUND AND PROCEDURAL HISTORY

Cox's Civil Complaint

On August 22, 2018, Cox filed his complaint for damages against Harris in the Mariposa County Superior Court. Cox was not represented by an attorney at that time. In the complaint, Cox alleged that in 2015, Harris made "false statements" to "the Sheriff" and others that she was raped by Cox.**5** Allegedly, "[a]s a result of the false accusation," criminal charges were brought against Cox in Mariposa County. As further alleged in the complaint, "[t]he charges were dismissed several years later and the District Attorney admitted … that [Harris] had lied." As a result of the alleged false accusation, Cox claimed to have suffered general, economic, reputational and emotional damage. Based on the above allegations, Cox's complaint sought to state the following causes of action: (1) defamation; (2) libel; (3) malicious prosecution; and (4) abuse of process.

---

**4** Although Cox's notice of appeal refers to both the order granting the special motion to strike and the subsequent attorney fee order, Cox's brief on appeal only addresses the order granting the special motion to strike and makes no further argument with respect to the attorney fee order. It therefore appears that Cox's reference to the attorney fee order in the notice of appeal was based solely upon his challenge to the underlying order granting the motion to strike. In any event, any other potential argument or issue relating to the attorney fee order is forfeited due to his failure to raise or adequately discuss it. (*Nelson v. Avondale Homeowners Assn*. (2009) 172 Cal.App.4th 857, 862; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656.)

**5** Harris's report to the Mariposa County Sheriff or to a deputy of that office is, for purposes of this opinion, synonymous with her making of a police report. That is, we have used these terms, i.e., police report and sheriff's report, interchangeably herein. (*Ante,* fn. 1.)

Harris's Special Motion to Strike Complaint

On December 19, 2018, Harris filed her special motion to strike the complaint under section 425.16, also referred to herein as the anti-SLAPP motion. The motion was made on the ground that the causes of action alleged in the complaint arose from protected activity within the meaning of section 425.16, and that Cox cannot meet his burden of establishing a probability of success on the merits. Harris's motion also requested an award of attorney fees and costs incurred in having to bring the motion.

The motion was accompanied by Harris's declaration. In Harris's declaration, she stated that she met Cox through an online dating site in approximately October 2015, and on November 11, 2015, she travelled to visit him at his home known as "Bison Creek Ranch" in Mariposa County. Harris asserted in her declaration that "Mr. Cox sexually assaulted me and held me against my will at Bison Creek Ranch from November 11, 2015 through November 13, 2015." According to Harris, during that time, Cox also threatened her life and choked her. Harris further asserted that, on November 13, 2015, she was able to get away from Cox's home and, in her words, "that day I filed a police report about what Mr. Cox did to me." After the incident she assertedly had bruises, a swollen throat, and vaginal tearing. Her declaration attached a redacted copy of the police report and a photograph allegedly depicting her bruising. Finally, Harris's declaration stated that "[t]he District Attorney issued a criminal complaint, which was subsequently amended on February 22, 2016," and a copy of the amended criminal complaint was attached.

In Harris's points and authorities in support of her motion, she argued that Cox's lawsuit was not legitimate but was merely to retaliate against her for having the courage to report Cox's sexual assault to the police. She argued that her right to report the rape to the police is protected by the anti-SLAPP statute and that Cox cannot show a probability of prevailing.

4.

<u>Cox's Opposition to the Motion</u>

Cox hired an attorney to represent him in November 2018. On December 18, 2018, one day before the special motion to strike was filed by Harris, a request for dismissal was filed by Cox, through his new counsel, to voluntarily dismiss all of the causes of action in the complaint other than malicious prosecution. The dismissal was entered on December 18, 2018. The trial court observed that the request for dismissal and the special motion to strike likely "crossed paths in the mail."

Cox filed opposition to the special motion to strike on January 22, 2019. He argued that because the only remaining cause of action was for malicious prosecution, there was no protected conduct under the anti-SLAPP statute, and therefore the special motion to strike should be denied. Moreover, according to Cox, even if he had to show a probability of prevailing on his cause of action for malicious prosecution, the evidence he presented with his opposition papers was sufficient to meet that burden. That evidence included Cox's declaration denying that he raped, battered or kidnapped Harris. Cox asserted therein that the "whole story [Harris] told the Sheriff was a lie." He admitted to having sex with Harris after they met through an online dating service. However, he said the last time they had sex was on November 8, 2015, the morning after Cox and Harris had attended a wedding together. Cox asserted that Harris elected to stay at the ranch during that time and afterward, and he allowed her to do so. He explained that Harris sent some texts to him on November 12, 2015 which were mistaken, such as texts about not liking "getting slapped in the face" or "last night's rough sex." Cox noted in his declaration that on the evening of November 12, 2015, he went out to dinner with Harris at a local restaurant.

In addition to Cox's declaration, additional exhibits were submitted by Cox. The exhibits included an excerpt of a worker's compensation deposition in 2017, in which Harris appears to be saying she cannot recall being the victim of sexual or physical abuse other than an attack in 2010. Cox also attached a record of cell phone texts made by

5.

Harris during the time she claimed she was trapped at the ranch and could not make outgoing calls. Cox argued these and other inconsistencies in Harris's story confirmed she was not telling the truth and that Cox's claim of malicious prosecution was adequately supported.

In his opposition to the special motion to strike, Cox also submitted a copy of Mariposa County District Attorney Thomas Cooke's request for dismissal of the criminal complaint against Cox. The dismissal was requested by the district attorney on August 14, 2017, pursuant to section 1385 of the Penal Code, "in the furtherance of justice." The court or judge assigned to the criminal case granted the dismissal that same day. In Cox's declaration, he alleged that the district attorney subsequently "admitted on video that [Harris] had lied." Cox stated that someone gave him a copy of this video, which could be found on "youtube."

Harris's Reply Papers in Support of Motion

In Harris's reply declaration, she stated in greater detail her account of what allegedly happened. She claimed it began on November 11, 2015, when Cox got mad at her and choked her for calling him by his actual name, i.e., Jerry, rather than "Bronson." Harris then described how Cox allegedly raped her; including that he forcibly penetrated her vagina and mouth. Harris stated that Cox told her no one would believe her if she said anything, and that she could be easily disposed of. The next day, on November 12, 2015, she attempted to leave the ranch, but she could not locate her keys. According to her reply declaration, Cox continued to physically and verbally assault her and prevented her from leaving the ranch. She admitted that Cox took her to a restaurant on November 12, 2015, but he had allegedly warned her not to raise any suspicion or make any eye contact with anyone. He had her car keys and drove her car to the restaurant.

Further, according to Harris's reply declaration, she was finally able to escape the ranch on November 13, 2015, with the help of another person who was on the premises by the name of Darlene W. (Darlene). Harris stated that when Darlene saw her face and

6.

cheek she said, " '[h]e (Mr. Cox) hit you didn't he?' " and then Darlene drove Harris to the sheriff's office. Harris's reply declaration continued: "On November 13, 2015, the Mariposa County Sherriff's office ('the Sheriff') interviewed me with a victim advocate present. After my initial interview with the Sheriff, I was transported for a Sexual Assault Response Team ('SART') examination."

Harris's reply papers included a full and complete copy of the police report. Included in the police report were findings that semen found from the swabs taken of Harris's vaginal area during her examination matched the DNA of Cox. Additionally, an account of the police interview with the SART examiner who had examined Harris was provided, which included the examiner's observations of extensive bruising over Harris's entire body including legs and buttocks, along with signs of trauma or micro fractures to the vagina, all of which were stated by the examiner to be consistent with Harris's report of a sexual assault. Also contained in the police report was an account of an interview with Cox by one of the sheriff's deputies on November 13, 2015, in which it was reported that Cox denied ever having any sexual encounters with Harris and said that "he had never even kissed her."

At the same time, we note that portions of the full police report indicated inconsistencies or discrepancies in Harris's portrayal of what occurred. For example, phone records not only revealed Harris could send texts, but revealed that Harris spoke with a friend on her cell phone on November 12, 2015 for approximately 23 minutes, but Harris never mentioned any concerns to her friend in that phone call. Also, other persons who were staying in the same cabin on the night of November 11, 2015, told the sheriff's deputy that they did not hear any loud noises that night and did not observe anything out of the ordinary the next morning between Cox and Harris.

In her reply points and authorities in support of her special motion to strike, Harris reiterated her position that making the report to police of the crime allegedly committed against her was protected activity under the anti-SLAPP statute, and furthermore, that

7.

Cox had failed to plead or to minimally substantiate all of the necessary elements of his cause of action for malicious prosecution.

The Hearing of the Motion

The hearing on the special motion to strike was held on March 11, 2019. In addressing the several evidentiary objections made by the parties, the trial court ruled that it would be considering the entire police report or sheriff's report. However, in regard to the 2017 worker's compensation deposition transcript submitted by Cox, the trial court sustained Harris's objection on the ground it was not adequately authenticated. As to the YouTube video allegedly depicting the district attorney saying words to the effect that he dismissed the case because he learned that Harris had lied, the trial court sustained Harris's objections because Cox "failed to authenticate the YouTube video, and it lacks foundation." Additionally, the trial court found Cox had failed to comply with the requirement of the rules of court (Cal. Rules of Court, rule 2.1040(b)(1)) to provide a written transcript of any statements contained in a video or audio recording. In light of these rulings, the trial court also sustained Harris's objections to certain statements contained in Cox's declaration as to the content of the YouTube video and/or the reasons the district attorney made its decision to dismiss the criminal case.

In its ruling on the merits of the motion from the bench, the trial court held that when Cox dismissed the other causes of action in the complaint, he also removed any factual basis in the pleading for a malicious prosecution cause of action. Therefore, the complaint failed to state facts constituting a cause of action. Further, the trial court stated it was giving weight to "the independent investigation doctrine," and also noted that "from the sheriff's report, the DNA test corroborates that Mr. Cox did have sexual intercourse with [Harris]" even though Cox had "denied having any sexual contact with [her] whatsoever." For these reasons, the trial court concluded that under the "second prong" of the analysis of the anti-SLAPP motion, Cox failed to meet his burden of showing a probability of prevailing on the malicious prosecution action. Therefore, the

8.

motion was granted. In granting the motion, it is apparent the trial court implicitly agreed with Harris's position that her report to the police was protected speech or conduct under the anti-SLAPP statute. Finally, the trial court found that Harris was entitled to an award of attorney fees under the anti-SLAPP statute, but the court continued the hearing on the attorney fee request to May 6, 2019.

The order granting the motion was made on March 11, 2019, although the formal written order was not filed until May 6, 2019. The subsequent order granting to Harris a recovery of attorney fees and costs pursuant to the anti-SLAPP statute was entered on May 6, 2019. Cox timely filed his notice of appeal on May 10, 2019.

## DISCUSSION

### I. Standard of Review

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. (*Ibid.*) We also independently decide whether the complainant has established a reasonable probability of prevailing on the merits. (*Chabak v. Monroy* (2007) 154 Cal.App.4th 1502, 1510.) On the latter issue, we neither weigh credibility nor compare the weight of the evidence. Rather, we accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 326.)

### II. Overview of the Anti-SLAPP Statute

Section 425.16, subdivision (b)(1), provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff

9.

will prevail on the claim." An act in furtherance of a person's right of petition or free speech is broadly defined by section 425.16, subdivision (e), to include the following: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

"[T]he Legislature enacted section 425.16, the anti-SLAPP statute, to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. [Citation.]" (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315; accord, *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) "The Legislature authorized the filing of a special motion to strike such claims (§ 425.16, subds. (b)(1), (f)), and expressly provided that section 425.16 should 'be construed broadly.' [Citations.]" (*Club Members for an Honest Election v. Sierra Club*, *supra*, at p. 315; see § 425.16, subd. (a).)

The resolution of an anti-SLAPP motion follows a two-step process: "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.… [Second], [i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 67.) That is, if the defendant makes the required showing, the burden *shifts* to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. (*Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 384.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from

10.

protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 89.)

To satisfy the first step or prong, the moving defendant must show the cause of action arises from acts that come within one of the categories of section 425.16, subdivision (e). (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) If the defendant does not meet this threshold burden, the court denies the motion without addressing the second step. If the defendant makes the required showing, the burden shifts to the plaintiff to satisfy the second step of the anti-SLAPP analysis by demonstrating the merit of the claim. (*Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 384.)

To satisfy the second step or prong, a plaintiff must state and substantiate a legally sufficient claim. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) " 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]' " (*Ibid*.) In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant. (§ 425.16, subd. (b)(2); *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) Described as a procedure similar to a summary judgment motion, the court's role in this second step has been stated as follows: "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Baral v. Schnitt*, *supra*, 1 Cal.5th at pp. 384–385.) " '[C]laims with the requisite minimal merit may proceed.' " (*Id*. at p. 385.) However, as to the second step, a plaintiff seeking to demonstrate the merit of the claim may not rely solely on its complaint; instead, " 'its proof must be made upon competent admissible evidence.' [Citations.]" (*Sweetwater Union High School*

11.

*Dist. v. Gilbane Building Co.*, *supra*, 6 Cal.5th at p. 940.)[6] If the plaintiff fails to meet its burden of showing minimal merit under the second step or prong, the motion will be granted.

### III. The Claim Arose Out of Protected Activity

Communications with the police are protected under the anti-SLAPP statute. (*Comstock v. Aber* (2012) 212 Cal.App.4th 931, 941–942 & cases cited therein; *Chabak v. Monroy*, *supra*, 154 Cal.App.4th at p. 1512 [report to police by minor that she was touched inappropriately by physical therapist was protected under anti-SLAPP statute as coming within her right to petition government].) The only exception would be an admittedly false police report, which is illegal (see Pen. Code, § 148.5), or where the police report was false as a matter of law under undisputed facts. (*Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 966–967 [an allegedly false police report can be protected petitioning activity under the first prong of the anti-SLAPP statute if the falsity of the report is controverted]; see *Flatley v. Mauro*, *supra*, 39 Cal.4th at pp. 316, 333 [where conduct is conclusively shown to be illegal as a matter of law, it is not protected under § 425.16].) Here, since the evidence was in conflict regarding the issue of whether Harris's police report was potentially false, her communications to the police constituted protected petitioning activity for purposes of the anti-SLAPP statute. Therefore, the first prong of the anti-SLAPP analysis was clearly satisfied by Harris.

The fact that the absolute litigation privilege under Civil Code section 47 is inapplicable to malicious prosecution claims (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 216) does not affect our holding that the subject conduct comes within the protection of the anti-SLAPP statute. The Supreme Court previously addressed that issue, concluding

---

[6] At the second stage of an anti-SLAPP hearing, the court "may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial." (*Sweetwater Union High School Dist. v. Gilbane Building Co.*, *supra*, 6 Cal.5th at p. 949.)

12.

that section 425.16 is nonetheless applicable to malicious prosecution causes of action. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, 736–737 (*Jarrow*).)[7] Indeed, in view of the plain wording of the anti-SLAPP statute, which is applied broadly, *Jarrow* noted with approval that "every Court of Appeal that has addressed the question has concluded that malicious prosecution causes of action fall within the purview of the anti-SLAPP statute." (*Jarrow*, at p. 735.)

Cox's only argument relating to the first prong is that, because the trial court construed his voluntary dismissal of the other causes of action (i.e., besides malicious prosecution) as effectively removing all factual allegations from the complaint, no facts remained in the pleading that could potentially constitute protected conduct for purposes of the anti-SLAPP statute. We disagree with Cox's argument. Based on our own de novo review of the pleading, together with other documents submitted in connection with the anti-SLAPP motion, it is clear that Cox's claim for malicious prosecution was premised upon or arose out of his assertion that Harris's communications to the police were false. Under the record before us, such communications constituted protected conduct under section 425.16. We conclude the first prong of the anti-SLAPP analysis has been met.

## IV. Plaintiff Failed to Substantiate His Malicious Prosecution Claim

Harris's threshold burden of showing the cause of action arose from protected activity having been satisfied, the burden shifted to Cox to demonstrate a probability of prevailing on the merits of the cause of action. (*Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 384.) To meet that burden, he was required to state and substantiate a legally sufficient

---

[7] Noting the litigation privilege is "an entirely different type of statute" than section 425.16, *Jarrow* explained: "The former enshrines a substantive rule of law that grants absolute immunity from tort liability for communications made in relation to judicial proceedings [citation]; the latter is a procedural device for screening out meritless claims [citation]." (*Jarrow*, *supra*, 31 Cal.4th at p. 737.)

claim. (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1056.) " 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]' " (*Ibid.*) In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant. (§ 425.16, subd. (b)(2).)

A. Cox Stated a Legally Sufficient Claim

The first aspect of showing a probability of success on the merits is to have stated a legally sufficient cause of action in the complaint. "If the pleadings are not adequate to support a cause of action, the plaintiff has failed to carry his burden in resisting the motion." (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 31.) The elements of a cause of action for malicious prosecution are that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in the plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341.)

Here, the trial court held that when Cox dismissed the other (i.e., all except malicious prosecution) causes of action in the complaint, the effect of that dismissal was to remove *all* of the factual allegations from the complaint. Consequently, the trial court found the complaint lacked the required factual elements for malicious prosecution. As a result, the trial court concluded that Cox had not met his burden of stating a legally sufficient claim.

We take issue with the trial court's interpretation of the dismissal. Based on our de novo review thereof, it does not appear from plaintiff's request for dismissal that any particular factual allegations within the complaint were being removed or stricken from the pleading, but only that three of the four causes of action—each of which were premised on the same set of underlying facts—were being dismissed. Therefore, when plaintiff's remaining cause of action for malicious prosecution stated that "[p]laintiff re-

14.

alleges and incorporates by reference all paragraphs above[,]" the referenced factual allegations of the complaint were retained in the malicious prosecution cause of action. Those factual allegations included that Harris falsely reported to the sheriff that Cox raped her; her false report led to criminal charges being brought against Cox; the charges were dismissed years later, and the district attorney indicated that Harris had lied.

Although the pleading is lacking in specificity, and the allegations do not frame the elements of the cause of action in legal terminology, liberally construed the pleading of such facts was minimally sufficient to allege that the prosecution was precipitated by Harris when she allegedly made a knowingly false report to the sheriff that she was raped by Cox, and that such actions were consequently malicious and without probable cause on her part. The further allegation concerning the district attorney's purported affirmation that Cox "had lied" appears to be addressing the underlying reason for the dismissal; that is, it is an effort to plead a favorable termination. We note this allegation is ambiguous and uncertain because it lacks meaningful factual context and specificity. It could be interpreted as alleging (or attempting to allege) the district attorney dismissed the case because he concluded the rape accusation by Harris was itself a lie or untrue. On the other hand, assuming the allegation of the district attorney's affirmation is correct it may only mean the district attorney thought Harris was lacking in credibility or that she apparently lied about some of the peripheral details of the case. The latter would not necessarily indicate a favorable termination on the merits. Nevertheless, because the ambiguous nature of this allegation was *arguably* more a failure of clarity and/or of specificity than one of substance, we do not believe the pleading, by itself, provides a satisfactory basis for our determination of the instant appeal. Accordingly, for purposes of our review of the anti-SLAPP motion, we shall construe the ambiguity in Cox's favor and conclude that Cox set forth a legally sufficient claim. Rather than resolving this matter based on the pleading alone, we proceed to consider whether plaintiff has substantiated his claim with prima facie evidence.

15.

B.  Cox Failed to Substantiate His Claim

In responding to the anti-SLAPP motion, Cox had the burden of *substantiating* his claim by making a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by him is credited.  (*Rusheen v. Cohen*, *supra*, 37 Cal.4th 1048, 1056.)  Claims with the requisite minimal merit may proceed.  (*Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 385.)  The court does not weigh the evidence or resolve conflicts; rather, it accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.  (*Id*. at pp. 384–385.)

Here, Cox's evidence in opposition to the motion included his declaration stating in detail his version of events, admitting that he had consensual sex with Harris on November 8, 2015, but denying that he raped or kidnapped her and asserting that the whole story Harris told to the police was a lie.  This declaration indicated what Cox would testify to at trial, and if such assertions of fact were accepted as true—i.e., that Cox's version of events is actually what happened and therefore Harris made a knowingly false report and lied to the police—it would tend to show in a prima facie sense that Harris's accusations to the police were malicious and without probable cause.  Therefore, those two elements of the cause of action would appear to have at least minimal merit.

The remaining essential element of the cause of action for malicious prosecution which had to be substantiated by Cox was that the criminal case or proceeding "was commenced by or at the direction of the defendant and was pursued to a legal termination in … [the plaintiff's] favor."  (*Casa Herrera, Inc. v. Beydoun*, *supra*, 32 Cal.4th at p. 341.)  We shall consider this element in two parts:  first, whether the evidence showed Harris may be deemed to have initiated the prosecution; and second, whether the evidence showed a termination in Cox's favor.

### 1. Prosecution Requirement

In its ruling on the motion, the trial court stated that under "the second prong," plaintiff did not show a probability of prevailing. That conclusion was apparently based on the trial court's decision to "give weight to" what it referred to as "the independent investigation doctrine." As explained below, the independent investigation defense relates to the issue of who may be found to have initiated a criminal prosecution.

In terms of whether a private person may be deemed to have initiated a criminal prosecution, the test is whether the defendant was actively instrumental in causing the prosecution. (*Cedars-Sinai Medical Center v. Superior Court* (1988) 206 Cal.App.3d 414, 417; accord, *Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1482.) This requires that the defendant must have " 'at least sought out the police or prosecutorial authorities and falsely reported facts to them indicating that plaintiff has committed a crime. [Citation.]' " (*Cedars-Sinai Medical Center v. Superior Court*, *supra*, 206 Cal.App.3d at p. 417, quoting *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710, 720; accord, *Greene v. Bank of America* (2013) 216 Cal.App.4th 454, 464.) On the other hand, "in most cases, a person who merely alerts law enforcement to a possible crime and a possible criminal is not liable if, law enforcement, on its own, after an independent investigation, decides to prosecute." (*Williams v. Hartford Ins. Co.* (1983) 147 Cal.App.3d 893, 898.) In the latter case, the independent investigation may create an affirmative defense to a malicious prosecution cause of action. (*Ibid.*)

Here, the evidence presented by the parties reflects that Harris was actively instrumental in causing the prosecution; that is, she sought out the police and reported that Cox had raped her. At the very least, this evidence was sufficient to create minimal merit on this issue, which was sufficient for purposes of meeting the evidentiary burden in response to the anti-SLAPP motion. Harris argues herein that the extensive police investigation in this case insulates her as a matter of law, but that does not necessarily follow. She may have still been actively instrumental in bringing about the prosecution

17.

under the principles cited above.  In any event, to the extent the independent investigation defense may potentially be applicable, it would involve issues of fact that, on the record before the trial court, could not be resolved as a matter of law in connection with the subject anti-SLAPP motion.

### 2. *The Favorable Termination Requirement*

Termination in favor of the plaintiff is an essential element of the tort of malicious prosecution, and the requirement is strictly enforced.  (*Cox v. Griffin* (2019) 34 Cal.App.5th 440, 450.)  "The core concept is that the termination must reflect on the *merits* of the prior action."  (*Ibid.*)  " 'The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort [of malicious prosecution].' "  (*Casa Herrera, Inc. v. Beydoun*, *supra*, 32 Cal.4th at p. 341.)  Therefore, in order for the termination of the prior action to be considered favorable to the malicious prosecution plaintiff, it must reflect on the merits and *indicate the plaintiff's innocence* of the misconduct alleged in the prior action.  (*Id*. at pp. 341–342; accord, *StaffPro, Inc. v. Elite Show Services, Inc*. (2006) 136 Cal.App.4th 1392, 1399–1400; *Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401, 1411.)  Because the termination must reflect the innocence of the accused, a dismissal by itself is not enough.  (*Jaffe v. Stone* (1941) 18 Cal.2d 146, 150.)  Dismissals of criminal proceedings can be on a variety of grounds that do not necessarily indicate the innocence of the accused.  (*Ibid.*)  If the resolution of the underlying action leaves doubt as to the party's innocence, it is not a favorable termination.  (*Eells v. Rosenblum* (1995) 36 Cal.App.4th 1848, 1855.)  However, evidence of the reasons for the dismissal may be presented to satisfy the favorable termination element.  (*Cox v. Griffin*, *supra*, 34 Cal.App.5th at pp. 451–452; *Susag v. City of Lake Forest*, *supra*, 94 Cal.App.4th at p. 1411.)

In the present case, the dismissal was made pursuant to Penal Code section 1385, in the furtherance of justice.  By itself, that form of dismissal does not necessarily involve

a consideration of the merits of the case or indicate the innocence of the accused.  (See *People v. Hatch* (2000) 22 Cal.4th 260, 273; *Agresti v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 599, 604.)

In his opposition to the anti-SLAPP motion, Cox attempted to indicate the reason for the dismissal of the criminal case against him by making reference to the existence of a YouTube video.  At the hearing of the motion, the trial court requested an offer of proof concerning the video.  In response, Cox's attorney stated the content of the video depicted the district attorney at a public meeting admitting that the reason for dismissing the case against Cox was that Harris had lied.  In response to the trial court's further questions, Cox's attorney stated he did not know who made the video recording, and he did not recall the date when it was made, but he believed the occasion was a small political gathering in which the district attorney was running for office and someone in the audience asked a question about Cox's case.[8]  Harris objected at the hearing to the admission of the YouTube video on the grounds that it was not authenticated and lacked foundation.  The trial court sustained Harris's evidentiary objections.[9]  Under Evidence Code section 1400, "a video recording is authenticated by testimony or other evidence that it actually depicts what it purports to show."  (*McGarry v. Sax* (2008) 158 Cal.App.4th 983, 990.)  Nothing in the record before us regarding the subject anti-SLAPP

---

[8]     Cox's attorney also stated, in making his offer of proof, that he believed the video was "shot with permission" because it was "a small room" and "it was clear it was being shot."

[9]     In her respondent's brief in the instant appeal, Harris states it is unclear whether or not the individual speaking in the video is, in fact, District Attorney Cooke, when the recording was made, whether the individual being recorded was even aware that he was being recorded, or whether the discussion actually involved Cox's case.

19.

motion indicates that such authentication evidence was provided by Cox or potentially existed. Nor was any potential basis for curing the objection indicated.[10]

In *Sweetwater Union High School Dist. v. Gilbane Building Co.*, *supra*, 6 Cal.5th 931, the Supreme Court explained the nature of evidence that may be considered in an anti-SLAPP motion and held that the basic test is reasonable admissibility *at trial*. (*Id.* at p. 949.) In that case, the Supreme Court set forth the relevant principles as follows: "[A]t the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial. Conversely, if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection. If an evidentiary objection is made, the plaintiff may attempt to cure the asserted defect or demonstrate the defect is curable." (*Ibid.*)

On appeal, Cox has not presented any legal or factual analysis of whether the trial court's evidentiary ruling excluding the YouTube video constituted error. Therefore, Cox has forfeited such argument on appeal. (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418; *Keyes v. Bowen*, *supra*, 189 Cal.App.4th at p. 655; *Nelson v. Avondale Homeowners Assn.*, *supra*, 172 Cal.App.4th at p. 862.) Although Cox's briefing on appeal makes perfunctory mention that the YouTube video should not have been excluded, he fails to provide legal authority or discussion beyond that assertion. "[A]n argument raised in such perfunctory fashion is waived." (*People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4; accord, *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482.) Nor has Cox argued that any basis exists to authenticate the accuracy of the YouTube video such that there would be a reasonable

---

**10** The trial court also excluded the YouTube video on the additional ground that no transcript was provided as required by the applicable rules of court. The trial court noted, "All that we have in your pleadings was a link to a YouTube video."

20.

possibility for its admissibility at trial. In light of these failings, Cox has not only forfeited such arguments but has failed to meet his fundamental burden as the appellant of demonstrating error. A trial court's judgment or order is presumed to be correct on appeal, and error must be affirmatively demonstrated. (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556–557; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Based on the foregoing, we conclude that any error relating to the trial court's exclusion of and failure to consider the YouTube video in connection with the anti-SLAPP motion is forfeited on appeal. Accordingly, the trial court's decision excluding that evidence stands. As a result, Cox failed to meet his burden in response to the anti-SLAPP motion of showing prima facie evidence that the dismissal of the criminal charges constituted a favorable termination on the merits that reflected his innocence. Since there was no evidence on the essential issue of a favorable termination, Cox did not substantiate the minimal merit of his cause of action for malicious prosecution, and the trial court correctly granted the anti-SLAPP motion.[11]

---

[11]    Cox has requested that we judicially notice a hearing transcript from a proceeding in San Luis Obispo County relating to a request for a domestic violence restraining order. The transcript concerns a hearing held on July 26, 2019, on said restraining order request, in *Harris v. Cox*, case No. 18FL-0715, which was months after the present appeal was taken from the trial court's anti-SLAPP order. We deny the request for judicial notice, since that matter was not part of the record before the trial court in the anti-SLAPP motion. (*MMM Holdings, Inc. v. Reich* (2018) 21 Cal.App.5th 167, 187; see *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration].) "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) No exceptional circumstances are present to warrant a departure from these basic rules.

## **DISPOSITION**

The order granting Harris's special motion to strike under section 425.16 is affirmed, and the subsequent order granting attorney fees to Harris under that same statute is likewise affirmed.  Harris is entitled to her costs on appeal.

LEVY, Acting P.J.

WE CONCUR:


POOCHIGIAN, J.


DE SANTOS, J.

22.